**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTHONY JOHNSON, | : | |
|     Petitioner | : | Criminal No. 1:08-CR-0018 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Respondent | : | |

**MEMORANDUM**

Pending before the Court is Petitioner Anthony Johnson's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Doc. No. 100.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will deny Petitioner's motion.

**I.  BACKGROUND**

On January 8, 2007, Petitioner was charged with several counts of violating Pennsylvania laws regarding the illegal possession of controlled substances, drug paraphernalia, and a firearm. (Doc. No. 123-2 at 3.) The Court of Common Pleas of Dauphin County, Pennsylvania arraigned Petitioner on these charges on March 23, 2007. (Id. at 5.) On April 12, 2007, Petitioner filed a motion to suppress evidence seized in connection with his arrest pursuant to the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Constitution of the Commonwealth of Pennsylvania. (Id.; Doc. No. 123 at 9.) Aside from two continuances granted after the filing of the motion to suppress, there was no further activity in Petitioner's state court proceedings until the Commonwealth made an application for an entry of nolle prosequi, which the state court granted on April 14, 2011. (Doc. No. 123-2 at 5.)

On January 16, 2008, a federal indictment was returned against Petitioner, charging that Petitioner, having been convicted of three crimes punishable by imprisonment for a term

1

exceeding one year, knowingly possessed a Taurus, .38 Special revolver, which had been shipped and transported in interstate and foreign commerce, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. No. 1.) An arraignment hearing was held on January 17, 2008, at which Petitioner entered a plea of not guilty. (Doc. No. 10.) On January 23, 2008, Attorney Assad Omar Bucaram was appointed to represent Petitioner. (Doc. No. 14.) On April 23, 2008, Petitioner filed a motion to suppress evidence seized in connection with his arrest. (Doc. No. 23.) A hearing on this motion was held on May 28, 2008 (Doc. No. 38), and the Court denied the motion on September 17, 2008 (Doc. No. 56).

On May 28, 2008, a superseding indictment was returned against Petitioner, charging him in Count II with possession with intent to distribute, and distribution of, marijuana and cocaine, in violation of 21 U.S.C. § 841(a). (Doc. No. 33.) Petitioner entered a plea of not guilty to the charges in the superseding indictment on June 17, 2008. (Doc. No. 44.) On December 23, 2008, Petitioner pled guilty to Count I of the superseding indictment. (Doc. No. 67.) On April 8, 2009, the Court sentenced Petitioner to an imprisonment term of 180 months, a fine of $1,000, a special assessment fee of $100, and a supervised release term of four years. (Doc. No. 78.) The Court also dismissed Count II of the superseding indictment on this date. (Id.)

On April 9, 2009, the Court terminated Attorney Bucaram as Petitioner's counsel and appointed new counsel for Petitioner. (Doc. No. 79.) Petitioner filed a notice of appeal to the United States Court of Appeals for the Third Circuit on April 24, 2009. (Doc. No. 82.) The Third Circuit summarily affirmed Petitioner's conviction and sentence on January 27, 2010. (Doc. No. 89.)

On March 2, 2011, Petitioner filed a motion to vacate, modify, or correct sentence under 28 U.S.C. § 2255 (Doc. No. 92), a motion for leave to proceed in forma pauperis (Doc. No. 94), and a motion pursuant to Rule 6(b) of the Rules Governing Section 2255 Proceedings (Doc. 95). On March 4, 2011, the Court issued an Administrative Order with Notice of Limitations on Filing of Future Petitions under 28 U.S.C. § 2255 ("Administrative Order"). (Doc. No. 97.) On April 15, 2011, Petitioner filed a letter with the Court in which he suggested that he did not receive the Administrative Order. (Doc. No. 98.) In an abundance of caution, the Court reissued the Administrative Order on April 18, 2011, attaching a Section 2255 motion form to the Administrative Order. (Doc. No. 99.) On April 25, 2011, Petitioner filed a new Section 2255 motion and a notice of election. (Doc. Nos. 100, 101.) The Government filed a brief in opposition to Petitioner's motion on May 18, 2011. (Doc. No. 104.) Petitioner filed a reply brief on June 3, 2011. (Doc. No. 105.)

On June 24, 2011, an evidentiary hearing was held in order to provide Petitioner with the opportunity to develop the record on the issue of whether Attorney Bucaram provided ineffective assistance of counsel. (Doc. Nos. 109, 111.) At the hearing, Petitioner's current counsel requested that the record remain open. (Doc. No. 111.) On January 6, 2012, a second evidentiary hearing was held. (Doc. No. 121.) During this hearing, Petitioner's counsel submitted the docket sheet from Petitioner's case in the Court of Common Pleas of Dauphin County as an exhibit and requested that the Court permit Petitioner to file a supplemental brief in support of his Section 2255 motion, which the Court granted. (Id.; Doc. No. 122.) Petitioner filed his supplemental brief in support on January 20, 2012 (Doc. No. 123), and the Government filed a brief in opposition on February 2, 2012 (Doc. No. 124).

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may file a motion requesting that the sentencing court vacate, set aside, or correct his sentence on the grounds that: "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Section 2255, however, does not afford a remedy for all errors that may have been made at trial or sentencing. United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993). "The alleged error must raise 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Furthermore, Section 2255 generally limits a federal prisoner's ability to attack the validity of his sentence to cure jurisdictional errors and errors that rose to the level of a constitutional violation. United States v. Timmreck, 441 U.S. 780, 783-84 (1979).

## III.   DISCUSSION

Petitioner raises four arguments in support of his Section 2255 motion. First, Petitioner argues that Attorney Bucaram provided ineffective assistance of counsel because he convinced Petitioner to enter a guilty plea to the offense of possession of a firearm by a convicted felon. (Doc. No. 100 at 4.) Second, Petitioner contends that Attorney Bucaram was ineffective because he failed to obtain a report from the Government establishing that the revolver in Petitioner's possession at the time of his arrest traveled in interstate commerce. (Id. at 5.) Third, Petitioner asserts that the Court violated his due process rights by failing to grant his motion to suppress evidence seized in connection with his arrest. (Id. at 6-7.) Petitioner also states that his

appellate counsel was ineffective on this issue, but he does not elaborate on that statement. (Id. at 7.) Finally, Petitioner argues that the Government violated his due process rights by adopting the case for federal prosecution. (Id. at 8.) The Court will address each of these arguments in turn.

  **A.** **Ineffective Assistance of Counsel**

In order to survive, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001). The first Strickland prong requires a petitioner to "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [Petitioner] by the Sixth Amendment." Strickland, 466 U.S. at 487. Under the second Strickland prong, a petitioner "must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." Id. Petitioner has the burden of satisfying both prongs. Id. "A court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

    1. *Alleged Ineffectiveness of Counsel for Convincing Petitioner to Plead Guilty to the Offense of Possession of a Firearm by a Convicted Felon*

Petitioner contends that he wanted to defend against the charge of possession of a firearm by a convicted felon at trial but that Attorney Bucaram wrongfully persuaded him to plead guilty to the charge by informing him that he "faced a life sentence if he loses at trial." (Doc. No. 100 at 4.) The test for determining the validity of a guilty plea is "whether the plea represents a

5

voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). A challenge to a guilty plea based upon the ineffective assistance of counsel, however, is analyzed using the two-part Strickland standard set forth above. See Hill v. Lockhart, 474 U.S. 52, 58 (1985). Counsel's advice, therefore, must fall "within the range of competence demanded of attorneys in criminal cases" if it is to provide a basis for a knowing and voluntary plea. See McMann v. Richardson, 397 U.S. 759, 771 (1970). If counsel's performance is deficient in this regard, the Court must determine whether the error affected the outcome of the plea process. Hill, 474 U.S. at 59. Here, Attorney Bucaram's advice was not constitutionally deficient. The Government asserts that Petitioner faced life imprisonment as a maximum punishment for being a career criminal in possession of a firearm. (Doc. No. 104 at 7.); see also Custis v. United States, 511 U.S. 485, 487 (1994) (stating that 18 U.S.C. § 924(e) "raises the penalty for possession of a firearm by a felon from a maximum of 10 years . . . to a mandatory minimum sentence of 15 years and a maximum of life in prison . . . if the defendant has three previous convictions . . . for a violent felony or serious drug offenses.") Thus, Attorney Bucaram's representation that Petitioner, who had three previous convictions, faced life imprisonment if he was convicted of the offense did not fall below an objective standard of reasonableness, and Petitioner's argument must fail.

>   2.   *Alleged Ineffectiveness of Counsel for Failing to Obtain a Report from the Government Regarding the Taurus, .38 Special Revolver*

Petitioner next contends that Attorney Bucaram provided ineffective assistance of counsel because he failed to obtain a report from the Government, establishing that the Taurus, .38 Special revolver in Petitioner's possession at the time of the arrest traveled in interstate commerce, which is a necessary element of 18 U.S.C. § 922(g). (Doc. No. 100 at 5.) The

Government argues that Attorney Bucaram was not required to obtain a report from the Government on this issue "when the element of the offense should be uncontested and the defendant is going to enter a guilty plea." (Doc. No. 104 at 7.) Even in the unlikely event that Attorney Bucaram did not take any steps to confirm that the element could be met, Petitioner's argument fails under the second prong of Strickland because he cannot show that he was prejudiced by Attorney Bucaram's errors. As the Government points out, all Taurus firearms are manufactured in Brazil and, thus, necessarily travel in interstate commerce. (See Doc. No. 104 at 8.) The Government also states that it was prepared to provide the testimony of Special Agent Scott Endy of the Bureau of Alcohol, Tobacco, Firearms and Explosives, who would have testified that all Taurus firearms are manufactured in Brazil. (Id.) Because the Government would have proven that the revolver in Petitioner's possession at the time of his arrest traveled in interstate commerce, the Court finds that Attorney Bucaram was not ineffective for failing to obtain a report from the Government on this issue.

### B.    Due Process Violations

Petitioner further asserts that both the Court and the Government denied him due process. First, he contends that the Court denied him due process by "fail[ing] [to] apply current and established Supreme Court rulings" when it ruled on his motion to suppress evidence seized at the time of his arrest. (Doc. No. 100 at 7.) Petitioner also states that this issue "indicate[s] ineffective assistance of appellate counsel," but he does not elaborate on this point. (Id.) To the extent that Petitioner is attempting to relitigate his motion to suppress, his claim must fail. In United States v. DeRewal, the Third Circuit, addressing a similar situation, recognized that "[m]any cases have held that Section 2255 generally 'may not be employed to relitigate

questions which were raised and considered on direct appeal'" and refused "to permit such relitigation here." 10 F.3d 100, 105 n.4 (3d Cir. 1993) (citations omitted). The Third Circuit summarily affirmed Petitioner's conviction and sentence on January 27, 2010. (Doc. No. 89.) Petitioner, therefore, may not use his Section 2255 motion to relitigate the motion to suppress. Accordingly, the Court finds that Petitioner has failed to establish that the Court denied him due process or that his appellate counsel provided ineffective assistance of counsel.

Second, Petitioner argues that the Government violated his due process rights by indicting him in federal court when he was already facing criminal charges in the Court of Common Pleas of Dauphin County. (Doc. No. 100 at 8-9.) Petitioner's supplemental brief in support of his Section 2255 motion clarify that Petitioner's contention is that the Government violated his due process rights by intentionally delaying filing the indictment in federal court until after he filed a motion to suppress evidence in state court. (Doc. No. 123 at 12-13.) According to Petitioner, the Government's delay was intentional and done in order to obtain the "advantage of lower suppression standards and higher sentencing guidelines." (Id. at 12.)

To prevail on a due process claim based on the Government's delay in filing an indictment, Petitioner must prove that (1) the Government intentionally delayed bringing the indictment in order to obtain a tactical advantage and (2) that the delay actually prejudiced him. United States v. Gouveia, 467 U.S. 180, 192 (1984); United States v. Lovasco, 431 U.S. 783, 789 (1977); United States v. Marion, 404 U.S. 307, 325-26 (1971). The Supreme Court has made clear that not "every delay-caused detriment to a [petitioner's] case should abort a criminal prosecution," and that "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an

indictment." Lovasco, 431 U.S. at 790; Marion, 404 U.S. at 324-25.  Instead:

> [T]he due process inquiry must consider the reasons for the delay as well as the prejudice to the accused, such that no deviation from fundamental conceptions of justice is evidenced when a prosecutor refuses to seek indictments until he is completely satisfied that he should prosecute and will be able promptly to establish guilt beyond a reasonable doubt. Investigative delay is fundamentally unlike delay undertaken by the Government solely to gain tactical advantage over the accused, and does not deprive a defendant of due process even if he is somewhat prejudiced by the lapse of time.

Snyder v. Klem, 438 F. App'x 139, 141 (3d Cir. 2011) (internal citations and internal quotation marks omitted) (citing Lovasco, 431 U.S. at 790, 795-96).

Petitioner devotes the majority of his supplemental brief to the argument that the Government obtained a tactical advantage by delaying the filing of the federal indictment until after Petitioner filed a motion to suppress in state court because Pennsylvania law regarding seizures is broader than the Fourth Amendment.  (See Doc. No. 123 at 14-22.)  Regardless of the purported distinctions between federal law and Pennsylvania law, the Double Jeopardy Clause of the Fifth Amendment does not bar federal prosecutions based on the same facts as state court convictions.  Abbate v. United States, 359 U.S. 187, 194 (1959).  Further, the Third Circuit has held that the Double Jeopardy Clause does not bar a federal prosecution after a state court suppression motion has been granted and a nolle prosequi has been entered in the state system. United States v. Wilson, 413 F.3d 382, 389-90 (3d Cir. 2005).  Here, the state court never even issued a ruling on Petitioner's state court suppression motion.  (See Doc. No. 123-2 at 5.)  Thus, the Court finds that any tactical advantage obtained by the Government in delaying the filing of the indictment to be minimal.  See United States v. Beall, 581 F. Supp. 1468, 1470 (D. Md. 1984) (finding "any tactical advantage to be minimal at best where there was never a ruling on

the motion to suppress in the state proceedings") (emphasis in original).

Furthermore, Petitioner contends that he suffered actual prejudice because he "spent a year preparing his defense based on Pennsylvania's heightened protection of privacy" and was subject to a lower sentencing guideline range in state court. (Doc. No. 123 at 23-24.) These contentions are not sufficient to establish prejudice rising to a constitutional violation. Petitioner has failed to present evidence that establishes that the pre-indictment delay caused him actual, as opposed to speculative, prejudice. See Gouveia, 467 U.S. at 192 ("[S]peculative arguments, without more, are not sufficient to satisfy [this] burden."). For example, he has not identified any actual witnesses who were no longer available or any specific evidence that became actually unavailable as a result of the delay.

Moreover, Petitioner's contentions of prejudice do not appear to actually be based on the pre-indictment delay; rather, they appear to be premised on the proposition that the Government should not have filed a federal indictment against him while his state court proceedings were pending. For example, Petitioner claims that he suffered prejudiced due to the disparity between state and federal sentencing guidelines but offers no explanation as to how the pre-indictment delay – rather than the filing of the indictment itself – caused this prejudice. In addition, Petitioner has not shown how his approximately year-long study of Pennsylvania law regarding seizures negatively affected his ability to defend against the federal charges brought against him in the indictment, especially in light of the fact that he notes in his supplemental brief that his state court suppression motion was filed pursuant to both Pennsylvania law and the Fourth Amendment. (Doc. No. 123 at 9.) Accordingly, the Court concludes that Petitioner has not met his burden in establishing actual prejudice.

**IV.    CERTIFICATE OF APPEALABILITY**

In proceedings brought under 28 U.S.C. § 2255, an applicant cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. Under 28 U.S.C. § 2253(c)(2), a court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists would not disagree with the Court's assessment of Petitioner's claims. A COA will not issue in this case.

**V.    CONCLUSION**

The Court concludes that Petitioner has failed to meet his burden in establishing that his trial counsel provided ineffective assistance of counsel or that the Court violated his due process rights in denying his motion to suppress. Further, as Petitioner has failed to establish either intentional delay or actual prejudice, the Court concludes that the Government's pre-indictment delay did not violate his due process rights. An order consistent with this memorandum follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ANTHONY JOHNSON,** | : | |
| Petitioner | : | Criminal No. 1:08-CR-0018 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| Respondent | : | |

## ORDER

**AND NOW**, on this 29th day of March 2012, **IT IS HEREBY ORDERED THAT**:

1. Petitioner Anthony Johnson's motion to vacate, set aside, or correct sentence (Doc. No. 100) is **DENIED**;

2. Petitioner's motion to vacate, set aside, or correct sentence (Doc. No. 94), motion for leave to proceed in forma pauperis (Doc. No. 94), and motion pursuant to Rule 6(b) of the Rules Governing 28 U.S.C. § 2255 Proceedings are **DENIED AS MOOT**;

3. A certificate of appealability **SHALL NOT ISSUE**; and

4. The Clerk of Court is directed to close the case.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania